BLANCHE FREDRICKSON, appellee, v. JOHN P. HELINE et al., appellants.

No. 50149.

(Reported in 106 N.W.2d 74)

NOVEMBER 15, 1960.

Duffield, Pinegar & Spencer, by Richard L. Pinegar, of Des Moines, for appellants.

Bannister, Carpenter, Ahlers & Cooney, by Paul Ahlers and Robert Allbee, of Des Moines, and John C. McDonald, of Dallas Center, for appellee.

THOMPSON, J.—On January 4, 1959, a collision occurred between an automobile owned and driven by the plaintiff and another car owned by defendant Oscar E. Heline which was driven at the time by defendant John P. Heline. Plaintiff's action asked to recover damages sustained as the result of the alleged negligence of John P. Heline in operating the automobile owned by his codefendant, Oscar E. Heline. The jury returned its verdict for the plaintiff in the sum of $22,500. The defendants moved for a new trial, their motion was denied, and they appeal to this court.

I. The only error assigned by the defendants is thus stated: "The Court erred in overruling defendants' Motion for New Trial on the ground the verdict was excessive." Accordingly we have only the question raised by the error assigned for determination here.

While the assigned error is broad, it is evident the defendants do not seriously urge the verdict was so excessive as to indicate passion and prejudice on the part of the jury which in and of itself requires a new trial. There is no record of any action by or influence upon the jury which would arouse passion and prejudice. Mallinger v. Brussow, 252 Iowa 54, 105 N.W.2d 626. Each of the authorities cited and relied upon by the defendants goes only to the duty of the court to reduce the amount assessed by ordering a remittitur of a part of the verdict or a new trial if the remittitur is not filed. We shall consider the case from that standpoint.

That the courts have a duty to order a remittitur or, in the alternative, a new trial, when it appears the jury

has not truly responded to the issues and the amount awarded is not within the rule of fair compensation is well settled. Ferris v. Riley, 251 Iowa 400, 414, 101 N.W.2d 176, 184, and authorities there cited. We have also said that no two cases are identical in their facts as to the amount of damages sustained. Ferris v. Riley, supra, page 413 of 251 Iowa, page 184 of 101 N.W.2d. We must evaluate each case upon its own record, and we must be careful that we do not invade the province of the jury, which is the fact-finding body empowered to assess damages. Mallinger v. Brussow, supra; Soreide v. Vilas & Co., 247 Iowa 1139, 1153, 78 N.W.2d 41, 49; Von Tersch v. Ahrendsen, 251 Iowa 115, 123, 99 N.W.2d 287, 292.

We are also committed to the rule that in considering questions arising upon matters such as this we must take the evidence in the aspect most favorable to the plaintiff which it will reasonably bear. It will not avail the defendants to rely upon evidence in the record favorable to them if there is other evidence which fairly supports the verdict and judgment rendered in the trial court. We must also give weight to the fact that the trial court, which has had the benefit of seeing and hearing the witnesses, observing the conduct of the jury, and has before it all the incidents and the entire picture of the trial, has not seen fit to interfere. Von Tersch v. Ahrendsen, supra, page 123 of 251 Iowa, page 292 of 99 N.W.2d; Newman v. Blom, 249 Iowa 836, 851, 89 N.W.2d 349, 359.

It is in the light of these established principles that we must view the evidence as to plaintiff's injuries and determine whether it clearly appears that the amount awarded is beyond that which can be fairly sustained by the record and violates the rule of fair compensation.

II. At the time of the accident the plaintiff was a widow, 55 years of age. She was 56 at the time of the trial. Since November 1956 she had been regularly employed in stock-room work at Younkers' store in Des Moines, at $165 per month. She has been unable to return to her employment there because of her injuries, and after attempting to work at a canning factory she was compelled to quit after three days. Mortality tables introduced in evidence showed that at 56 years of age she had a life expectancy of 17.1 years.

She had suffered from arthritis for some years before the accident, but had no difficulty in carrying on her work. Immediately after the collision she was taken to the office of Dr. Eugene E. Lister, in Dallas Center. She had a bump on her right shin which was black and blue and her arm was painful and was black and blue between her elbow and shoulder. Both knees were painful. She was able to walk into the doctor's office and with the aid of her son to get up the step to her apartment. For some time following her knees and arm were very sore and painful, the left knee causing the most pain. She testified she had excruciating pain, and could not straighten her left knee without working with it. Between the date of the accident and March 17, 1959, Doctor Lister treated her several times. On the latter date, after she had been referred to Dr. Dwight C. Wirtz, an orthopedic surgeon in Des Moines, she underwent an operation to remove a loose bone fragment or calcium deposit from the back part of the left knee. At the time she went to Doctor Wirtz the knee was so tender it could hardly be touched. It was Doctor Wirtz' opinion that the bone or calcium fragment was loosened as a result of the injury sustained in the collision.

The plaintiff testified that she had continual pain up to the time of the trial. The medical evidence for her is that the injury increased her arthritic condition. She said she has constant pain in her left knee, although it is not as bad when she sits. She can walk a block, then her knees begin to cause her severe pain. There is considerable corroboration from other witnesses as to her apparent pain and inability to work. There was evidence of damage to her automobile, which was totally wrecked, in the sum of $125; and of hospital and medical expenses totaling $486.55.

Mrs. Fredrickson's earnings at the time of her injury were $1980 per year. There is evidence from which the jury could find she had steady employment, and that she could not work at anything she was qualified to do thereafter. She had lost $1800 in wages to the time of the trial. If we assume she would retire at the age of 65, a common retirement age, her loss of earning to that date would be $17,820. Above this would be

the loss of her car, her medical and hospital bills, and her pain and suffering.

It was for the jury to say what her loss of wages and her damage for pain and suffering would be. This statement is qualified only by the necessity for some substantial evidence to support the verdict. We have endeavored to set out above enough of the record favorable to plaintiff to show there was such evidence. Whether the plaintiff would be disabled from working in the future, and for how long, was for the jury to determine. This is true also as to what allowance should be made for pain and suffering. The jury took the view that plaintiff had suffered substantial injuries for which its verdict was intended to compensate. We said in Von Tersch v. Ahrendsen, supra, page 123 of 251 Iowa, page 292 of 99 N.W.2d:

"The allowance of damages is primarily for the jury and we should not substitute our judgment for theirs unless it clearly appears the verdict is the result of passion and prejudice or is unconscionable or clearly not warranted by the evidence."

To transgress this rule would be to substitute our judgment for that of the jury as the trier of the facts. This we must be careful not to do. There was ample evidence here from which the jury could find a most substantial loss of earnings by the plaintiff, and could make a considerable allowance for pain and suffering. The able trial court did not think interference on the part of the courts is warranted, and we agree. The defendants feel that an allowance of $22,500 for what they think was no more than a slight bump on plaintiff's knee is excessive beyond reason. It may be that juries sometimes display the prevailing tendency toward liberality with other people's money; it may be the amount awarded here is more than this court would have been inclined to allow if it had been the trier of the facts. But there was evidence to sustain the verdict and we cannot substitute our judgment for that of the jury.—Affirmed.

LARSON, C. J., and BLISS, GARFIELD, GARRETT, HAYS, PETERSON, and THORNTON, JJ., concur.