Ruth E. OLSEN and Herlov Olsen, wife and husband, Appellees,

v.

Merle DRAHOS, d/b/a Drahos School Bus Service, a/k/a Drahos Bus Co., and Chester Leigh Shepard, Appellants.

No. 2–56439.

Supreme Court of Iowa.

May 21, 1975.

Charles F. Hinton, Waterloo, for appellants.

Edward J. Gallagher, Jr., Waterloo, for appellees.

Submitted to MOORE, C. J., and LeGRAND, REES, REYNOLDSON and HARRIS, JJ.

MOORE, Chief Justice.

Defendants appeal from judgment on jury verdicts for plaintiffs for damages resulting from a motor vehicle intersection collision. Defendants' sole contention is the jury awards are grossly excessive. We affirm.

About 8:30 A.M., January 8, 1970 plaintiff Ruth E. Olsen was driving her automobile on Hammond Avenue in Waterloo when a bus owned by defendant Merle Drahos and driven by defendant Chester Leigh Shepard passed through a stop sign causing an intersection collision and personal injury to Mrs. Olsen.

Plaintiffs' petition in division I claimed $97,500 for Mrs. Olsen's damages resulting from the accident. In division II her husband Herlov Olsen claimed $16,250 for loss of past and future conjugal relationship and services. On trial in April 1973 the jury awarded Mrs. Olsen $54,321.35 and Mr. Olsen $10,000.

Defendants argue we should order and require a reduction of the jury awards in order to effectuate substantial justice. This same contention was considered and rejected by the trial court.

■ I. The applicable legal principles are well established by a long line of our cases. The assessment of damages is traditionally a jury function. Its decision should be disturbed only for the most compelling reasons. We will reduce or set aside a jury award only if it (1) is flagrantly excessive or inadequate; or (2) is so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is a result of passion, prejudice or other ulterior motive; or (4) is lacking in evidentiary support. Turner v. Jones, Iowa, 215 N.W.2d 289, 292; Pagitt v. City of Keokuk, 206 N.W.2d 700, 704; Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 659 and citations in each.

■ The most important of the above enumerated tests is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they all may arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. Where the verdict is within a reasonable range as indicated by the evidence we will not interfere with what is primarily a jury question. Turner v. Jones, supra, 215 N.W.2d at page 292; Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 814.

■ Before reaching the evidence these additional rules should be mentioned. We view the evidence in the light most favorable to the verdict and need only consider the evidence favorable to plaintiff whether it is contradicted or not. Turner v.

Jones, supra, 215 N.W.2d at page 292; Dobson v. Jewell, Iowa, 189 N.W.2d 547, 550; Miller v. Young, Iowa, 168 N.W.2d 45, 51. We must also give weight to the fact the trial court, with benefit of seeing and hearing the witnesses, observing the jury and having before it all incidents of the trial, did not see fit to interfere. Wiles v. Myerly, Iowa, 210 N.W.2d 619, 632; Schmitt v. Jenkins Truck Lines, Inc., supra, 170 N.W.2d at page 660; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 718, 107 N.W.2d 85, 92; Fredrickson v. Heline, 252 Iowa 92, 94, 106 N.W.2d 74, 76.

■ II. At the time of the accident Mrs. Olsen was 52 years of age. For several years she had been regularly employed in the credit department at Sears. She was then earning $91 per week. Her health was good. She was enjoying life. As a result of the collision she was thrown violently in the car. She sustained contusions of her right shoulder and serious injury to her cervical spine. She attempted to work that morning but was unable to do so. She was examined and X-rayed by her family doctor at a hospital and directed to go home and to bed. Pain in her neck, shoulders, lower back and right arm became excruciating. Thereafter she was never without some pain and discomfort. During the more than three years between injury and trial she was under the care of several Waterloo doctors and therapists. She made two trips to the Mayo Clinic at Rochester, Minnesota. The doctors there prescribed continued physiotherapy. She wore a cervical collar for a year. She tried a home traction on her bed. She was given cortisone shots, vitamin shots and had different kinds of therapy including ultra-sound, diathermy, ice therapy, which involved freezing of the cervical area, and finally X-ray therapy. She had been given a total of 180 treatments. At trial time she had a large muscle lump on her neck which was very sore. The pain therefrom went down into and over the edge of her shoulder. She rubbed her neck to help relieve the pain. She frequently had severe headaches and daily took pain-killing medication. Her almost constant pain affected her personality. She became irritable. She had next to no strength in her right hand and arm. She needed assistance in doing her work. She was unable to do all her housework, completely dress herself, fix her hair or do her gardening as she had done before the accident. She was exhausted at the end of a workday. She was unable to sleep through the night. She also lost considerable weight from her pre-accident weight of 110 pounds. Following the accident her hair turned gray.

The records show that as a result of the accident she sustained an estimated five percent permanent disability, approximately $2628.18 medical expenses and a loss of one week's work.

Her treating orthopedic specialist opined she will endure pain and suffering in the future, her work life had been shortened and future medical expense of at least $300 per year will be incurred if therapy and medication is used. He further stated that if surgery becomes necessary the cost will be at least $4000.

■ Mr. Olsen testified in detail of his wife's physical and personality changes resulting from the accident and the many household duties which he necessarily performed after her injury. She was extremely nervous riding in an automobile and it was necessary to stop and allow her to move around during short automobile trips. He stated their personal life was practically nil.

We are fully aware the value of the dollar is not what it used to be. Comparison of the verdicts here with those in earlier cases would be of no value.

We hold the jury awards to plaintiffs are supported by sufficient evidence and they should stand. We find no basis for the application of the other tests set out above.

Affirmed.